IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CRYSTAL S. R.[1], | Case No. 2:25-cv-00326-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Crystal R. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

**PROCEDURAL BACKGROUND**

Born in 1981, plaintiff alleges disability beginning June 25, 2020,[2] due to diabetes, neuropathy, a connective tissue disease, sleep apnea, and gastroparesis. Tr. 40-44, 240-47. Her claims were denied initially and upon reconsideration. On October 2, 2023, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 35-54. On December 28, 2023, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-27. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date. Tr. 18. At step two, the ALJ determined the following impairments were medically determinable and severe: "unspecified autoimmune disorder, obesity, diabetes mellitus, sleep apnea, hypothyroidism, and chronic diarrhea." *Id*. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id*.

Because she did not establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform sedentary work except:

> [She] can lift and carry, push and pull 10 pounds occasionally and a negligible amount of weight (such as file folders) frequently. She can sit for a total of up to about 6 hours in an 8-hour day and stand or walk for a total of up to about 2 hours in an 8-hour day. She must alternate positions approximately every 30 minutes between sitting and standing while staying on task. She can occasionally use a cane while ambulating. She can occasionally climb ramps or stairs. She can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently handle and finger with the

---

[2] Plaintiff previously applied for, and was denied, Supplemental Security Income on June 24, 2020, at the initial level. Tr. 71-83.

Page 2 – OPINION AND ORDER

bilateral upper extremities. She must be within a 3[-]minute walk to the restroom. She is able to understand, remember, and carry out simple, routine tasks.

Tr. 20.

At step four, the ALJ determined plaintiff has no past relevant work. Tr. 26. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite her impairments. Tr. 26-27.

## DISCUSSION

This case hinges exclusively on the ALJ's step five finding. Specifically, plaintiff argues the ALJ erred by failing to inquire and resolve two conflicts. Pl.'s Opening Br. 4-5 (doc. 7). First, plaintiff argues the ALJ did not reconcile the conflict between plaintiff's RFC limitation of carrying out "simple, routine tasks" and the job of order clerk, which requires Level 3 reasoning.[3] Second, plaintiff argues the ALJ failed to resolve the conflict between the job numbers provided by the VE and counsel. *Id.*

At step five, an ALJ bears the burden of "providing evidence that demonstrates that other work exists in significant numbers in the national economy that [a claimant] can do." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). "Given its inherent reliability, a qualified [VE's] testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily

---

[3] Plaintiff appears correct, however, that the ALJ erred in finding that plaintiff could perform the job of order clerk because the DOT describes that job as requiring reasoning level 3—which is inconsistent with her limitation to "simple, routine tasks." Pl.'s Opening Br. 5 (doc. 7), citing Tr. 20; *see also Zavalin v. Colvin*, 778 F.3d 842, 845-47 (9th Cir. 2015) (limitation to simple, routine tasks is inconsistent with reasoning level of 3). But any error was harmless because, as discussed below, the ALJ properly found that plaintiff could perform the additional jobs of assembler and inspector, which together have numbers that qualify as "significant" at 28,000. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (concluding that 25,000 national jobs a significant number that can support the Commissioner's nondisability determination).

Page 3 – OPINION AND ORDER

sufficient by itself to support an ALJ's step-five finding." *Ford v. Saul*, 950 F.3d 1141, 1060 (9th Cir. 2020).

In order to preserve the issue for appeal, the claimant must "raise the job-numbers issue in a general sense before the ALJ." *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017). If the ALJ then declines to "permit the claimant to submit supplemental briefing," the claimant "may raise new evidence casting doubt on a VE's job estimates before the Appeals Council, provided that evidence is both relevant and relates to the period on or before the ALJ's decision." *Id.* (citation and internal quotations omitted). To " determine whether the ALJ had a duty to address a conflict in job-number evidence (and failed to discharge that duty), [the court must] consider on a case-by-case basis whether new evidence submitted by a claimant . . . has 'significant probative' value." *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023) (quoting *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022)).

Here, the VE testified that a hypothetical individual with plaintiff's vocational factors and RFC could perform three representative occupations: order clerk, Dictionary of Occupational Titles ("DOT") # 209.567-014, with 34,000 national jobs; assembler, DOT # 706.684-030, with 12,000 national jobs; and inspector, DOT # 726.684-110, with 16,000 national jobs. Tr. 50. Plaintiff's counsel inquired to the source of the VE's testimony by asking "could you just briefly describe for me how you arrived at the job numbers that were provided?" Tr. 51. The VE responded: "I used Bureau of Labor Statistics reports, including Occupational Requirement Surveys, and Job Browser Pro software." *Id.*

Plaintiff subsequently submitted evidence to the Appeals Council – namely, several printouts from SkillTRAN's Job Browser Pro showing drastically reduced numbers associated with the representative occupations. Tr. 298-311. Plaintiff's counsel also submitted a letter with a

"walkthrough to demonstrate the process" of how his Job Browser Pro numbers were generated (basically establishing that he entered each DOT code online, and clicked "employment numbers" and then "DOT employment estimate"). Tr. 307-311.

As such, the question before the Court is whether contradictory evidence proffered to the Appeals Council from one of the same sources relied on by the VE concerning the incidence of jobs is sufficient to undermine the ALJ's step five finding. In *Wischmann*, the claimant's attorney submitted a "letter . . . and the six pages of printouts" from Job Browser Pro showing the available job numbers were significantly lower than what the VE had testified to at the hearing. *Wischmann*, 68 F.4th at 506. The Ninth Circuit found this evidence did not qualify "as significant probative evidence" sufficient to warrant remand. *Id.* In particular, the Ninth Circuit explained:

> The letter states only that Job Browser Pro produced a lower number of positions available nationally . . . the letter provides no information about how the job numbers were produced, other than the name of the software program used. A software program, however, is merely a tool that must be used appropriately to produce reliable results. Given that SkillTRAN's Job Browser Pro software is meant to assist a VE in performing a complex matching exercise of various sources of information from official and private sources, experience in using the program and interpreting the output would ordinarily be necessary to produce probative results. [And an] attorney . . . has no identified expertise in calculating job figures in the national economy. Nor does the letter establish that the attorney replicated a methodology that was set forth by the VE at the hearing. In addition, the letter provides no information about what queries were entered into the computer program, what variables were changed, or what filters were applied to the data. Nor does the letter state which version of the program was used, so we do not know whether the information used by the program was current or out of date.

*Id.* at 507 (internal citations and quotations omitted). Relatedly, the Ninth Circuit denoted the raw data provided by counsel's printouts was "not comprehensible to a lay person, and [the claimant did] not provide the interpretation necessary to make the pages meaningful." *See id.* ("uninterpreted data is not probative" and "an ALJ need not discuss evidence from a lay witness that the lay witness is not competent to provide").

Page 5 – OPINION AND ORDER

The majority of decisions interpreting *Wischmann* from this District have concluded that counsel's use of Job Browser Pro printouts to establish step five discrepancies does not warrant remand, emphasizing that the software is but one of many sources used by the VE to generate job number estimates. *See, e.g.*, *Daniele P. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1928747, *3 (D. Or. May 1, 2024); *see also* *Brian J. v. Comm'r, Soc. Sec. Admin.*, 2024 WL 4215646, *9 (D. Or. Sept. 17, 2024) ("ten pages of Job Browser Pro data plaintiff's counsel submitted to the Appeals Council" was not "significant and probative" because it was "raw and uninterpreted"). Even where the plaintiff does submit probative and significant counter evidence from a separately obtained vocational consultant, this District has concluded that the ALJ may still rely on the VE's numbers and expertise, provided that reliance is based on a reasonable interpretation of the record. *Rachel W. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 5505874, *5 (D. Or. April 9, 2024), *aff'd*, 2025 WL 999478 (9th Cir. Apr. 3, 2025).

The same is true here. Plaintiff's counsel provided a letter to the Appeals Council, along with several pages of printouts from Job Browser Pro. Although counsel provided an explanation of how those numbers were generated (notably, by using a basic search function), he provided no basis for establishing that someone with job number or vocational expertise produced or interpreted the results. In other words, there is no indication that plaintiff's counsel followed the VE's methodology. Likewise, the printouts provided by plaintiff's counsel contain raw data with no explanation for the multitude of complex acronyms, percentages and totals that are listed. It is also not clear whether counsel's estimates are from the relevant time period, insofar as some of

plaintiff's printouts appear to reflect job availability through 2022 (i.e., approximately one year before the ALJ hearing and decision), using data from as far back as 2017. *See, e.g.*, Tr. 301-06.[4]

In sum, plaintiff's evidence is neither probative nor significant under *Wischman* or District precedent and therefore substantial evidence supports the ALJ's step five finding.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 27th day of February, 2026.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

---

[4] The Court also notes that, while this data is unclear precisely because it is raw and uninterpreted, it does appear that counsel's query generated higher – indeed, significant – numbers associated with the representative occupation of "Inspector" based on the Bureau of Labor Statistics employment estimates. Tr. 301.

Page 7 – OPINION AND ORDER